Slip Op. 10-119

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
                                 :

HORIZON LINES, LLC,           :

                             :

         Plaintiff,          :

                             :     Before:       WALLACH, Judge

         v.               :     Court No.:   08-00009

                             :

UNITED STATES,             :

                             :

         Defendant.       :

———————————————————:

[Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.]

                             Dated:        October 21, 2010

Williams Mullen (Evelyn M. Suarez, Dean A. Barclay, and George H. Bowles) for Plaintiff Horizon Lines, LLC.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, U.S. Department of Justice (Edward F. Kenny); and Paula Smith, U.S. Customs and Border Protection, Of Counsel, for Defendant United States.

## **OPINION**

**Wallach, Judge:**

## I
## INTRODUCTION

      Plaintiff Horizon Lines, LLC ("Plaintiff") challenges a determination by U.S. Customs and Border Protection ("Customs") that certain coatings work performed on Plaintiff's vessel is subject to a 50 percent ad valorem duty as a foreign repair under 19 U.S.C. § 1466(a). Jurisdiction is available under 28 U.S.C. § 1581(a). Defendant United States ("Defendant") has moved for summary judgment. See Defendant's Motion for Summary Judgment ("Defendant's

Motion").  Because Plaintiff has abandoned its claims with respect to work performed above the waterline, <u>see</u> <u>infra</u> n.4, Defendant's Motion is GRANTED as to these claims.  Because material facts regarding Plaintiff's other claims remain in dispute, <u>see</u> <u>infra</u> Part IV, Defendant's Motion is DENIED as to these claims.

## II
## BACKGROUND

The work at issue in this action relates to the antifouling system of the CRUSADER, a U.S.-flagged vessel owned by Plaintiff. <u>See</u> Complaint ¶ 1.[1]  The growth of marine organisms on the hull of a nautical vessel can impair the speed or fuel efficiency of that vessel. <u>See</u> Defendant's Statement of Undisputed Material Facts with Respect to Its Motion for Summary Judgment ("Defendant's Facts") ¶ 3; Plaintiff's Statement of Material Facts as to Which Genuine Issues to Be Tried Exist ("Plaintiff's Facts") ¶ I-3.  Antifouling paint is generally designed to impede this growth by killing organisms that come into contact with it and by sloughing off if organisms attach to it. <u>See</u> Defendant's Facts ¶ 4; Plaintiff's Facts ¶ I-4.  This paint has a limited service life and may be reapplied as part of vessel maintenance. <u>See</u> Defendant's Facts ¶ 7; Plaintiff's Facts ¶ I-7.

In some antifouling paint, organotin compounds perform the biocidal function. <u>See</u> Plaintiff's Facts ¶ II-1; Defendant's Response to Plaintiff's Statement of Additional Material

---

[1] This opinion uses the terms "antifouling paint" and "antifouling coatings" interchangeably to refer to the particular type of antifouling system at issue in this action. <u>See</u> International Convention on the Control of Harmful Anti-Fouling Systems on Ships, 2001 ("IMO AFS Convention") art. 2 ("'Anti-fouling system' means a coating, paint, surface treatment, surface, or device that is used on a ship to control or prevent attachment of unwanted organisms."); Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Defendant's Brief") (referring generally to "antifouling paint"); Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response") (referring generally to "anti-fouling coatings" and "anti-fouling system").

Facts as to Which Genuine Issues to Be Tried Exist ("Defendant's Fact Response") ¶ US-2.[2]

Under the auspices of the International Maritime Organization ("IMO"), a number of states

(including the United States) agreed that these compounds "pose a substantial risk of toxicity and

other chronic impacts to ecologically and economically important marine organisms" and may

harm the health of humans who consume "affected seafood." International Convention on the

Control of Harmful Anti-Fouling Systems on Ships, 2001 ("IMO AFS Convention") at 1; see

Plaintiff's Facts ¶ II-1; Defendant's Fact Response ¶ US-1.  These states therefore agreed that, as

of January 1, 2008, certain vessels subject to their authority either:

> (1) shall not bear [organotin compounds which act as biocides in anti-
> fouling systems] on their hulls or external parts or surfaces; or
>
> (2) shall bear a coating that forms a barrier to such compounds leaching
> from the underlying non-compliant anti-fouling systems[.]

IMO AFS Convention at 15.  Vessels are to be inspected and certified by their flag state or by an

organization designated by that state. See id. at 19-21.[3]

In 2006, the CRUSADER drydocked at a shipyard in the People's Republic of China for

certain inspections and operations, including the work at issue. See Defendant's Facts ¶ 1;

Plaintiff's Facts ¶ I-1.  Prior to that work, the coatings on the CRUSADER's external hull below

the waterline comprised (from overcoat to undercoat): "tin-free anti-fouling coating; a sealer,

forming a barrier against any tin-bearing coatings underneath it; tin-bearing anti-fouling coating;

and regular paint, possibly tin-bearing." Plaintiff's Facts ¶ II-3; see Defendant's Fact Response ¶

US-3.  The condition of the coatings was described in part as follows:

---

[2] Organotin compounds contain tin (Sn) bonded with carbon (C). See HAWLEY'S CONDENSED CHEMICAL DICTIONARY (Richard J. Lewis Sr. ed., 14th ed. 2001) at 822.  "All are highly toxic." Id.

[3] The IMO AFS Convention was signed by the United States on December 12, 2002, see Plaintiff's Facts ¶ II-1; Defendant's Fact Response ¶ US-1, and approved by the Senate on September 26, 2008, see 154 CONG. REC. S. 9850 (declaring that, inter alia, "[t]his Convention is not self-executing").

<u>ESTIMATED SIZE OF COATING DEFECTS EXTERNAL HULL</u>

Flatbottom        25%    Local blistering
                  5%     Scatered corrosion

Under water vertical  10%    Local blistering
                      2%     Scatered corrosion

Defendant's Exhibit 4, W. Mann, 2006 CRUSADER Drydock Paint Report ("2006 Paint

Report") (syntax and spelling in original), <u>cited in</u> Defendant's Facts ¶ 5; <u>see</u> Plaintiff's Facts ¶ I-

5.  Plaintiff and Defendant dispute whether these coatings "compl[ied] with the requirements of

the IMO AFS Convention." Plaintiff's Facts ¶ II-5; <u>see</u> Defendant's Fact Response ¶ US-4.  They

also dispute how much service life, if any, remained in the tin-free antifouling coatings. <u>See</u>

Defendant's Facts ¶¶ 5-10; Plaintiff's Facts ¶¶ I-5-10.

   The work at issue was performed below the waterline and consisted of (1) removal of all

existing coatings such that bare steel was exposed, (2) application of "wholly tin-free regular

paint," and (3) application of "wholly tin-free anti-fouling coatings." Plaintiff's Facts ¶ II-4; <u>see</u>

Defendant's Fact Response ¶ US-4.  The American Bureau of Shipping certified that "the new,

wholly tin-free anti-fouling system complied with the IMO AFS Convention." Plaintiff's Facts ¶

II-4; <u>see</u> Defendant's Fact Response ¶ US-4.[4]  Plaintiff alleges that compliance with the IMO

AFS Convention, rather than repair or maintenance, was the "sole purpose" of this work.

Plaintiff's Facts ¶¶ II-4-6.  Defendant denies this allegation. <u>See</u> Defendant's Fact Response ¶¶

US-4-6.  If not for the IMO AFS Convention, Plaintiff claims that it would not have removed the

existing coatings but "would have done . . . a spot treatment and . . . added another layer of

---

[4] Plaintiff has abandoned its claims with respect to work performed above the waterline. <u>See</u> Plaintiff's
Response at 11 n.19; <u>see also</u> Defendant's Brief at 14-16.

antifouling coating." Defendant's Exhibit 11, Deposition of Joseph Edward Walla ("Walla Deposition") at 78.[5]

Following the CRUSADER's return to the United States, Plaintiff submitted Customs Form 226, "Record of Vessel Foreign Repair or Equipment Purchase." See Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Defendant's Brief") at 3-4. This form, as subsequently supplemented, identified the work performed on the CRUSADER. See id. at 4.  Customs reviewed this form and determined that, pursuant to 19 U.S.C. § 1466, Plaintiff "would owe $251,077.63 on the entire entry which included duties on the charges associated with the application of tin-free antifouling paint." Id.

Plaintiff protested portions of this determination, and Customs denied the protest in part. See Customs Headquarters Ruling ("HQ") H015615 (October 23, 2007).  Plaintiff then commenced the instant action to challenge portions of the denial, arguing that the work at issue is not a repair under 19 U.S.C. § 1466(a). See Summons; Complaint.  Following discovery, Defendant moved for summary judgment. See Defendant's Motion.

### III
### STANDARD OF REVIEW

In a civil action contesting the denial of a protest under 19 U.S.C. § 1515, the plaintiff bears the burden of demonstrating that such denial is incorrect. See 28 U.S.C. § 2639(a)(1).  The court makes its decision "upon the basis of the record made before the court." 28 U.S.C. § 2640(a).  The purpose of this de novo review is to "reach the correct result." Rheem Metalurgica S/A v. United States, 20 C.I.T. 1450, 1456, 951 F. Supp. 241 (1996) (citing Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984)).

---

[5] Joseph Walla is a supervisory port engineer who, pursuant to USCIT R. 30(b)(6), testified on Plaintiff's behalf regarding "issues involving the antifouling paint system that was put on the [CRUSADER] in 2006." Walla Deposition at 7-8.

The court will grant a motion for summary judgment "if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "The court may not resolve or try factual issues on a motion for summary judgment." Phone-Mate, Inc. v. United States, 12 CIT 575, 577 (1988), aff'd, 867 F.2d 1404 (Fed. Cir. 1989).  Instead, it must view the evidence "in a light most favorable to the nonmovant" and draw "all reasonable inferences . . . in the nonmovant's favor." Avia Group International, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988).

## IV
## DISCUSSION

Jurisdiction is available under 28 U.S.C. § 1581(a).  19 U.S.C. § 1466(a) does not apply generally to all vessel work, see infra Part IV.A.1, or specifically to all painting, see infra Part IV.A.2.  The factors frequently cited by Customs in its administration of that provision are not necessarily determinative as to the nature of the work at issue. See infra Part IV.A.3. Defendant's arguments in favor of summary judgment are not persuasive, see infra Part IV.B.1, and material facts remain in dispute, see infra Part IV.B.2.  Accordingly, summary judgment is not appropriate.

## A
## Legal Framework

## 1
## 19 U.S.C. § 1466(a) Applies Only To Equipment And Repairs

19 U.S.C. § 1466 reflects a Congressional desire to "protect the American shipbuilding and repairing industry." Texaco Marine Services, Inc. v. United States, 44 F.3d 1539, 1545 (Fed.

Cir. 1994) (quoting <u>Erie Navigation Co. v. United States</u>, 83 Cust. Ct. 47, 475 F. Supp. 160, 163

(Cust. Ct. 1979)).  The 50 percent <u>ad valorem</u> duty imposed by the statute was first prescribed in

1866. <u>See</u> Foreign Repairs to American Vessels, 66 Fed. Reg. 16,392, 16,392 (March 26, 2001).

The statute's current (and pertinent) version provides in relevant part that:

> [t]he equipments, or any part thereof, including boats, purchased for, or
> the repair parts or materials to be used, or the expenses of repairs made in
> a foreign country upon a vessel documented under the laws of the United
> States to engage in the foreign or coasting trade, or a vessel intended to be
> employed in such trade, shall, on the first arrival of such vessel in any port
> of the United States, be liable to entry and the payment of an ad valorem
> duty of 50 per centum on the cost thereof in such foreign country.

19 U.S.C. § 1466(a).[6]  Accordingly, assessment of a duty under 19 U.S.C. § 1466 requires an

affirmative answer to at least one of the following three threshold questions:

1)      Were "equipments, or any part thereof" purchased?

2)      Were "repair parts or materials" acquired?

3)      Were "expenses of repairs" incurred?

In answering the first question, the Court of Customs and Patent Appeals ("CCPA") held

that "the hull and fittings" do not constitute equipment, "equipment ordinarily being portable

things and the hull and fittings being constituted of those things of a permanent character

attached to the hull, which would remain on board if the vessel were to be laid up for a long

period." <u>United States v. Admiral Oriental Line</u>, 18 C.C.P.A. 137, 139 (1930) (holding that a

newly installed swimming pool is not equipment).[7]

In answering the second and third questions, the CCPA held that a new installation does

not constitute a repair. <u>See</u> <u>Admiral Oriental</u>, 18 C.C.P.A. at 141 (holding that installation of the

---

[6] The excerpted portion of the current statute is nearly identical to the corresponding portion of the 1866
statute, except that the 1866 statute referred to only "the foreign and coasting trade on the northern, northeastern,
and northwestern frontiers of the United States." 39 Cong. Ch. 201, 14 Stat. 178 at Sec. 23.

[7] Holdings of the CCPA are binding as precedent in the Federal Circuit. <u>See</u> <u>South Corp. v. United States</u>,
690 F.2d 1368, 1369 (Fed. Cir. 1982).

same swimming pool is not a repair).  "The word 'repair,' in its ordinary signification, means restoration to a sound or good state after decay, waste, injury, dilapidation, or partial destruction; supply of loss; reparation." <u>H.S. Folger v. United States</u>, T.D. 21670 (Board of General Appraisers 1899).  It "contemplates an existing structure which has become imperfect by reason of the action of the elements, or otherwise." <u>Admiral Oriental</u>, 18 C.C.P.A. at 141 (quoting <u>Gagnon v. United States</u>, 193 U.S. 451, 457, 24 S. Ct. 510, 48 L. Ed. 745 (1904)).[8]

A "modification," 19 C.F.R. § 4.14(h)(1), is neither equipment nor a repair and hence not subject to a duty under 19 U.S.C. § 1466. <u>See</u> 19 C.F.R. § 4.14(h)(1) ("Requests for relief from duty under 19 U.S.C. 1466(a) consist of claims that a foreign shipyard operation or expenditure is not considered to be a repair or purchase within the terms of the vessel repair statute or as determined under judicial or administrative interpretations.  Example: a claim that the shipyard operation is a vessel modification."); <u>SL Service, Inc. v. United States</u>, 357 F.3d 1358, 1359 (Fed. Cir. 2004) (describing "American Bureau of Shipping and United States Coast Guard required inspections and modifications" as "non-dutiable"); <u>Horizon Lines, LLC v. United States</u>, 659 F. Supp. 2d 1285, 1289 (2009) ("[T]he term 'repairs' describes work putting something that has sustained damage back into working condition whereas the term 'modifications' describes work addressing a problematic feature.").

---

[8] The Federal Circuit also distinguished repairs from routine cleanings and certain inspections. <u>Cf.</u> <u>SL Service</u>, 357 F.3d at 1359; <u>Texaco</u>, 44 F.3d at 1541 (citing <u>Northern Steamship Co. v. United States</u>, 54 Cust. Ct. 92, 96-98 (1965)).  <u>SL Service</u> and <u>Texaco</u> addressed whether and how 19 U.S.C. § 1466(a) applies to certain items, such as cleaning and drydocking, that are associated with dutiable repairs but that are not by themselves repairs. <u>See</u> <u>SL Service</u>, 357 F.3d at 1359 (upholding apportionment); <u>Texaco</u>, 44 F.3d at 1541 (prescribing a "but for" test). Accordingly, these decisions control the scope, but not the existence, of dutiable repairs. <u>See</u> <u>Horizon Lines, LLC v. United States</u>, 659 F. Supp. 2d 1285, 1289 (2009).

**2**
**Painting Is Not Necessarily A Repair Under 19 U.S.C. § 1466(a)**

Paint applied to a vessel's hull is not equipment. See H.C. Gibbs v. United States, 28 Cust. Ct. 318, 327 (1952), aff'd, 41 C.C.P.A. 57 (1953); cf. E.E. Kelly & Co. v. United States, 17 C.C.P.A. 30, 32 (1929) ("Paint is essential to the preservation of the ship's structure.  When applied, it is a part of the ship.").  In H.C. Gibbs, the United States argued that, inter alia, lettering on the hull applied for the purpose of advertising "consisted of temporary equipment to be used in connection with the particular cargo." H.C. Gibbs, 28 Cust. Ct. at 323.  The Customs Court rejected this argument and determined that the advertising was not subject to a duty under 19 U.S.C. § 1466(a). See id. at 327.[9]

Painting for the purpose of restoration, however, is a repair. See H.C. Gibbs, 41 C.C.P.A. at 60 (both cosmetic painting to restore "old and rusted surfaces" and repainting of the vessel name, which was necessitated by the cosmetic painting, constitute repairs); American Mail Line, Ltd. v. United States, 24 C.C.P.A. 70, 73 (1936) (repainting constitutes repairs); E.E. Kelly, 17 C.C.P.A. at 33 ("maintenance painting" constitutes repairs); H.C. Gibbs, 28 Cust. Ct. 318 (advertising painting does not constitute repairs); H.S. Folger, T.D. 21670 ("We are also of opinion that the item of $155 incurred for painting the vessel, which is no less for preservation than ornamentation, is an expense of [repairs].").

---

[9] On one occasion, the Customs Court concluded that "paint applied to the vessel is not to be regarded as hull and fittings." American Mail Line, Ltd. (Seattle) v. United States, 2 Cust. Ct. 779, 780 (1939).  This decision, however, conflates the equipment and repair components of 19 U.S.C. § 1466(a), see id., and is unpersuasive in light of H.C. Gibbs, 28 Cust. Ct. 318.  Regardless, Customs has not determined, and Defendant does not argue, that the antifouling paint at issue is equipment. See HQ H015615; Defendant's Brief; Defendant's Reply Memorandum in Support of Summary Judgment ("Defendant's Reply"); Defendant's Fact Response ¶¶ US-1, 2, 4, 5, 11, 12, 13, 14 ("As we made clear in our brief in chief, the issue at bar is whether the old tin free anti fouling coating on the CRUSADER which was replaced by [the shipyard] in 2006 was in disrepair.") (emphasis removed).

The primary purpose of a particular paint job is a question of fact. See H.C. Gibbs, 41

C.C.P.A. at 60.  In affirming the Customs Court's conclusion that certain cosmetic painting

constituted a repair, the CCPA explained that:

> The [trial] testimony is sufficiently strong to support a finding that the rust to which we have referred, to some extent at least, justified and made necessary a new paint job, and such testimony, as we view it, outweighs the other reasons assigned for such painting.  In other words, we feel that the weight of the testimony is strongly in support of a finding to the effect that the painting of the ship's hull was done primarily because of the rusted condition, and therefore should be designated as a repair within the meaning of [19 U.S.C. § 1466], as found by the trial court.

Id.; cf. Waterman Steamship Corp. v. United States, 26 Cust. Ct. 114, 122 (1951) (concluding

that certain annealing is not a repair because of the reason for that annealing).

### 3
### Certain Factors Identified By Customs Are Not Necessarily Determinative

Customs has frequently identified, but never promulgated through formal rulemaking,

four factors that it "may" consider in its duty determinations under 19 U.S.C. § 1466(a). E.g.,

HQ H071240 (March 16, 2010); HQ H041636 (June 24, 2009); HQ H072555 (August 25, 2009);

HQ 116589 (January 6, 2006) (identifying two of the four factors); HQ 116484 (September 21,

2005); HQ 115763 (September 30, 2002); HQ 114092 (September 12, 1997); HQ 113692 (July

2, 1997); HQ 227043 (August 12, 1996); HQ 226968 (May 31, 1996); HQ 112488 (October 9,

1992); HQ 112143 (July 9, 1992); HQ 111546 (October 28, 1991); see also HQ H015615

(identifying none of the factors).  The first two factors reflect the holding in Admiral Oriental, 18

C.C.P.A. at 139, that a vessel's hull and fittings do not constitute equipment:

> 1. Whether there is a permanent incorporation into the hull or superstructure of a vessel, either in a structural sense or as demonstrated by means of attachment so as to be indicative of the intent to be permanently incorporated.

>2. Whether in all likelihood an item would remain aboard a vessel during an extended lay-up.

E.g., HQ 114092 (citation omitted).

The third and fourth factors appear to reflect an attempt by Customs to distinguish a new installation from a repair.  Customs has formulated the third factor in two different ways.  One formulation asks:

>3. Whether, if not a first time installation, an item under consideration replaces a current part, fitting or structure which is not in good working order.

E.g., HQ 112488.  The other formulation inquires:

>3. Whether an item constitutes a new design feature and does not merely replace a part, fitting, or structure that is performing a similar function.

E.g., HQ 114092.  The fourth factor examines:

>4. Whether an item provides an improvement or enhancement in operation or efficiency of the vessel.

E.g., id.

Customs has repeatedly noted that "[t]hese factors are not by themselves necessarily determinative, nor are they the only factors which may be relevant in a given case.  However, in a given case, these factors may be illustrative, illuminating, or relevant with respect to the issue . . . ." E.g., HQ H072555; HQ 114092; cf. Horizon Lines, 659 F. Supp. at 1289-90 ("Because the HAWAII's cell entry guides, after the shipyard work, exhibited new design features that improved or enhanced the vessel's operation or efficiency, the 'good working order' condition of the cell entry guides, before the shipyard work, is not a relevant consideration in determining whether the work constitutes a non-dutiable modification, for purposes of 19 U.S.C. § 1466(a).").

The Federal Circuit requires this court to accord some deference to "a long-standing administrative practice . . . even where, as here, judicial review is de novo." SL Service, 357 F.3d at 1362 (quoting Toyota Motor Sales, U.S.A., Inc. v. United States, 7 C.I.T. 178, 192, 585 F. Supp. 649 (1984)); see also Optrex Am., Inc. v. United States, 475 F.3d 1367, 1371 (2007). Accordingly, like Customs, the court "may" consider these factors as potentially "illustrative, illuminating, or relevant" questions of fact but need not treat them as determinative on the issue of repairs. E.g., HQ H072555; HQ 114092.

The analysis undertaken by Customs in the instant matter, see HQ H015615 ("[The Customs Vessel Repair Unit] found the tin-free coating, freeboard coating system, blast and coat hatch covers work to be dutiable repairs.  We agree.  The descriptions of the work performed on the invoices clearly indicate that repair work was done in each case."), is not binding on the court. See United States v. Mead Corp., 533 U.S. 218, 221, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) (finding "no indication that Congress intended [for a Customs Headquarters Ruling] to carry the force of law") (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)); see also supra Part III (describing de novo review).  However, that analysis "is eligible to claim respect according to its persuasiveness." Id. (citing Skidmore v. Swift & Co., 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944)).

**B**
**Propriety of Summary Judgment**

**1**
**Defendant's Arguments Do Not Satisfy The Standard For Summary Judgment**

Defendant makes three principal arguments for summary judgment. See Defendant's

Brief at 9-14; Defendant's Reply Memorandum in Support of Summary Judgment ("Defendant's

Reply") at 4-6, 14-15.  All three arguments are unpersuasive.

Defendant's first argument is that the work at issue constitutes maintenance painting. See

Defendant's Brief at 9-11 (citing E.E. Kelly, 17 C.C.P.A. at 32-33).  The maintenance painting at

issue in E.E. Kelly involved the routine reapplication of paint. See E.E. Kelly, 17 C.C.P.A. at 32

("There was some testimony offered to show that a vessel needs her hull and superstructure

completely repainted about every two months in order to maintain the vessel in a clean,

presentable, and sanitary condition.").  Mr. Walla testified that "it's common practice to reapply

antifouling [paint] when you have the opportunity." Walla Deposition at 34.  Antifouling paint

was previously applied to the CRUSADER in 2001 and 2003. See id. at 18, 31.  In 2006, if not

for the IMO AFS Convention, Plaintiff "would have done . . . a spot treatment and building up of

the antifouling coating." Id. at 78.

However, Mr. Walla also testified that the work at issue was not routine:

> Q. . . .  Other than the wholesale removal and replacement of the
> antifouling system to meet an IMO requirement, have you ever done that,
> the wholesale removal and replacement of the antifouling system on any
> ship?
>
> A.  I've never done that.  No.
>
> Q. And why haven't you ever done that on any other ship?
>
> A.  It hasn't been necessary.
>
> Q. Why hasn't it been necessary?

  A. Because this is the—to my knowledge, the first legislation that insisted that the—one type of antifouling be removed or sealed in order to favor another type.

  Q. So, in your experience, you never had to remove and completely replace an antifouling system merely because it had worn out?

  A. No.

Id. at 62-63; see also id. at 61 ("We would not have removed the systems, if it wasn't for the IMO requirement.").  When these facts are viewed in a light most favorable to Plaintiff, the work at issue is either something other than or something more than the kind of maintenance painting described in E.E. Kelly, 17 C.C.P.A. at 32.

  Defendant's second argument is that any work that ameliorates a state of disrepair, however incidentally, is necessarily a repair.  See Defendant's Brief at 14; Defendant's Reply at 5-6.  In support of this argument, Defendant cites Admiral Oriental, 18 C.C.P.A. at 141.  See Defendant's Brief at 14; Defendant's Reply at 5-6.  That decision holds in part that a repair implies "an existing structure which has become imperfect by reason of the action of the elements, or otherwise." Admiral Oriental, 18 C.C.P.A. at 141.  It does not hold that the existence of such a structure implies a repair.  See id.  As Plaintiff correctly notes, Defendant confuses "the logical relationship between repairs and disrepairs.  Yes, every repair is preceded by disrepair.  But not every disrepair is followed by repairs." Plaintiff's Response at 24 (distinguishing between necessary and sufficient conditions).[10]

  Defendant also cites a single Customs Headquarters Ruling, which asserts that "in order to qualify as a modification rather than a repair it must be made clear that the element which has been replaced was in full working order at the time of the enhancement." Defendant's Reply at 6

---

[10] Similarly, an antifouling system that has some "deterioration and damage," E.E. Kelly, 17 C.C.P.A. at 32, might nonetheless be "in good working order," e.g., HQ 112488.

(quoting HQ 114140 (November 18, 1997)).  This unsupported assertion is neither binding, <u>see</u>

<u>Mead</u>, 533 U.S. at 221, nor persuasive, <u>see</u> <u>Skidmore</u>, 323 U.S. at 140, nor consistent with

precedent, <u>see</u> <u>H.C. Gibbs</u>, 41 C.C.P.A. at 60; <u>Horizon Lines</u>, 659 F. Supp. at 1289-90.

      Contrary to Defendant's second argument, the condition of the antifouling system prior to

the work at issue is not necessarily dispositive. <u>See</u> <u>supra</u> Part IV.A; <u>H.C. Gibbs</u>, 41 C.C.P.A. at

60 (describing the purpose of the work); <u>Horizon Lines</u>, 659 F. Supp. at 1289-90 (describing the

effect of the work).  Moreover, when viewed in a light most favorable to Plaintiff, the evidence

suggests that this system was in good working order.  Mr. Walla testified that "we would have

touched up [approximately] five percent of the flat bottom area and then two percent on the

vertical sides area" if the antifouling coatings had not been completely removed. Walla

Deposition at 60.  And Customs Vessel Repair Unit Specialist Mary Bean answered in the

negative when asked whether there was "any indication in the information you reviewed that . . .

the [prior] anti-fouling coating was in any way deteriorated." Plaintiff's Exhibit 9, Deposition of

Mary Bean ("Bean Deposition") at 6, 98.

      Defendant's third argument is that at least a portion of the work at issue constitutes a

repair and because Plaintiff "failed to segregate [that] portion of the invoice" from the other

portions, "the entire anti-fouling replacement charge is still dutiable as a repair." Defendant's

Fact Response ¶ 6 (citing 19 C.F.R. § 4.14(i) and HQ 112974 (July 18, 1995)); <u>see also</u>

Defendant's Reply at 14-15 (citing <u>Texaco</u>, 44 F.3d at 1548 and <u>Horizon Lines</u>, 659 F. Supp. 2d

at 1289).

      None of these authorities support Defendant's third argument.  While 19 C.F.R. § 4.14(i)

states that "[t]he cost of items for which a request for relief is made must be segregated from the

cost of the other items listed in the vessel repair entry," 19 C.F.R. § 4.14(i)(1)(i), it does not state

that the cost of items that are later determined to be nondutiable must be initially segregated from the cost of items that are later determined to be dutiable, see id.; cf. HQ 112974 ("Unless and until the applicant can satisfactorily itemize the costs associated with each aspect of the invoice, this item is dutiable."). Texaco notes only that the plaintiff "ha[d] made no effort" to segregate the expenses that it claimed to have incurred independent of its dutiable repairs. Texaco, 44 F.3d at 1541-42, 1548 nn.9-10. Horizon Lines notes only that the plaintiff had "properly segregated the non-dutiable [work] from other dutiable work." Horizon Lines, 659 F. Supp. 2d at 1289.

**2**
**Classification Of The Work At Issue Depends On Resolution Of Disputed Material Facts**

Plaintiff and Defendant appear to disagree on, inter alia, the nature, purpose, and effect of the work at issue as well as the condition of the antifouling system prior to that work. See, e.g., Plaintiff's Facts ¶¶ I-5 (significance of "blistering" and "corrosion"), 6 (effectiveness of the biocide in the prior antifouling coatings), 7 (service life of antifouling coatings generally), 10 (significance of service life); Defendant's Fact Response ¶¶ US-6 (reason for the work at issue), 8 (functionality of the prior antifouling system), 9 (remaining service life of prior antifouling coatings), 10 (condition of the prior antifouling system). These issues are material to the classification of the work at issue, see supra Part IV.A, and the evidence, when viewed in a light most favorable to Plaintiff, suggests that they are genuine, see, e.g., Walla Deposition at 59-60 (discussing the 2006 Paint Report); Bean Deposition at 98-101 (discussing the nature of the work at issue).[11] Accordingly, summary judgment is not appropriate.

---

[11] Because the court would reach this conclusion even without the deposition of James L. Dolan and the affidavits of Mr. Dolan and Mr. Walla, it need not address Defendant's arguments regarding these materials at this time, see Defendant's Reply at 6-13.

**V**
**CONCLUSION**

For the reasons stated above, Defendant's Motion is GRANTED as to Plaintiff's claims

with respect to work performed above the waterline and DENIED as to Plaintiff's other claims.


___/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: October 21, 2010
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
                                              :
HORIZON LINES, LLC,                           :
                                              :
              Plaintiff,                      :
                                              :        Before:      WALLACH, Judge
              v.                              :        Court No.:   08-00009
                                              :
UNITED STATES,                                :
                                              :
              Defendant.                      :
———————————————————:

## <u>ORDER</u>

   Defendant's Motion for Summary Judgment ("Defendant's Motion") having come before the court; the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

   ORDERED that Defendant's Motion is GRANTED IN PART and DENIED IN PART as provided in the Opinion accompanying this Order; and it is further

   ORDERED that trial in this matter shall take place from January 19, 2011 through January 21, 2011, beginning at 10:00am each day, in Courtroom 1 of the James L. Watson United States Court of International Trade Building, One Federal Plaza, New York, New York, and it is further

   ORDERED that, on or before December 17, 2010, the parties shall submit to the court a proposed pretrial order that is in substantial conformance with the attached sample pretrial order.


          __/s/ Evan J. Wallach____
          Evan J. Wallach, Judge


Dated: October 21, 2010
   New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                    :
                                    :
                                    :
            Plaintiff,              :
                                    :   Before:          WALLACH,
Judge
      v.                            :   Court No.:
                                    :
                                    :
                                    :
            Defendant.              :
                                    :
```

PRETRIAL ORDER

At a pretrial conference held before Hon. Evan J. Wallach, and attended by counsel, the following matters were discussed and agreed to, and are hereby ordered:

1.      **General**.  The parties recognize that this pretrial order controls the subsequent course of the action unless the order is modified by consent of the parties and the court, or by order of the court.  The sections that follow are part of this order.

2.      **Parties and Counsel**.  Section A shall set forth the names of all parties, the names, addresses and telephone numbers of their respective attorneys, and the names of trial counsel for each party.

3.      **Jurisdiction**.  Section B-1 shall set forth the statutes, legal doctrines, and facts upon which plaintiff claims jurisdiction is based.  Section B-2 shall indicate which, if any, of these are contested.

4.      **Uncontested Facts**.  All uncontested facts shall be set forth in Section C.

5.      **Claims and Defenses**.  Each party's claims and defenses shall be listed separately in Sections D-1, D-2, etc.

6.      **Damages and other Relief**.  Claims with respect to damages and other relief sought by each party shall be detailed in Sections E-1, E-2, etc.

7.      **Waivers of Claims**.  Except as provided in USCIT Rule 15, the parties waive all claims with respect to liability, damages, and other relief and all affirmative defenses that are not set forth in Sections D and E.

8.      **Issues**.  Section F shall set forth and separately number the issues of the case.  If the

parties cannot agree as to the issues, then their separate statements of the issues shall be set forth as Sections F-1, F-2, etc.

     **9.**     **<u>Witnesses</u>**.  Sections G-1, G-2, etc. shall list for each party each witness whose testimony is not unlikely at the trial, setting forth for each witness (a) name, (b) address, and (c) a summary of expected testimony, and for expert witnesses (d) the area of expertise, and (e) a current *curriculum vitae*.

     **10.**     **<u>Expert Witnesses</u>**.  Any scientific expert testimony must satisfy the five-part test set out in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

     **11.**     **<u>Exhibits</u>**.  Sections H-1, H-2, etc. shall list for each party the exhibits to be offered in evidence by that party.  Each list shall identify and describe each exhibit.  Plaintiff's exhibits shall be identified by numbers, defendant's by letters.

     **12.**     **<u>Objections to Exhibits</u>**.  Sections I-1, I-2, etc. shall list for each party each adversary's exhibits whose authenticity and admissibility are <u>not</u> stipulated.  Any specific ground for objection to any contested exhibit shall be stated.

     **13.**     The parties recognize that they shall not be allowed to introduce at trial any exhibits or witnesses not identified in this pretrial order except upon prompt notice to all parties and to the Court, and upon a showing of good cause.

     **14.**     All discovery is complete.

     **15.**     The trial will take approximately **_____** days.