Slip Op. 11-141

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HORIZON LINES, LLC, | |
| Plaintiff, | |
| v. | Before: WALLACH, Judge<br>Court No.: 08-00009 |
| UNITED STATES, | |
| Defendant. | |

[Defendant's Motion for a Directed Verdict is DENIED]

Dated: November 18, 2011

Williams Mullen (Evelyn M. Suarez, George H. Bowles, Dean A. Barclay, and Julia Forbes Thompson) for Plaintiff Horizon Lines, LLC; and Robert S. Zuckerman, Of Counsel, for Plaintiff Horizon Lines, LLC.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, U.S. Department of Justice (Edward F. Kenny and Jason M. Kenner); and Paula Smith, U.S. Customs and Border Protection, Of Counsel, for Defendant United States.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT**

**Wallach, Judge:**

**I**
**STANDARD OF REVIEW**

Pursuant to the court's jurisdiction under 28 U.S.C. § 1581(a), the statute provides for judicial review of denied protests filed in accordance with 19 U.S.C. § 1514. Although Customs' decisions are entitled to a presumption of correctness under 28 U.S.C. § 2639(a)(1), the Court makes its determinations upon the basis of the record made before the Court, rather than that developed by Customs. See United States v. Mead Corp., 533 U.S. 218, 233 n.16, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001). Accordingly, the Court makes the following findings of fact and conclusions of law as a result of the de novo trial. See 28 U.S.C. § 2640(a).

## II
## FINDINGS OF FACT

1. Plaintiff Horizon Lines, LLC ("Plaintiff") owns the Horizon Crusader, a U.S.-flagged vessel.

2. In January 12, 2006, to February 8, 2006 the Crusader was drydocked at Guangzhou Wenchong Shipyard ("GWS") in the People's Republic of China.

3. On October 5, 2001, the International Maritime Organization ("IMO") had adopted the International Convention of the Control of Harmful Anti-Fouling Systems on Ships ("Convention") which banned tin-based anti-fouling coatings forbidding the application of tin-based anti-fouling coatings after January 1, 2003 and requiring that the tin-based anti-fouling coatings on existing vessels be removed or sealed by January 1, 2008.

4. At the previous drydocking of the Crusader in 2003, among other work, the entire underwater portion of the hull was coated with Hempel's Anti-fouling Oceanic Tin-Free Paint.

5. When the Crusader entered GWS in China in 2006, it was approximately three years since its last application of anti-fouling paint.

6. Anti-fouling paint works in two ways: 1) it contains a biocide active or chemical which inhibits marine growth and 2) it physically polishes or sloughs off the hull if marine growth attaches to the paint.

7. Following the Crusader's return to the United States, Horizon Lines submitted Customs Form 226, "Record of Vessel Foreign Repair or Equipment Purchase."

8. This form, as subsequently supplemented by the Application for Relief and associated documentation, identified the work performed on the Crusader.

9. Customs reviewed this entry and associated submission and determined that, pursuant to 19 U.S.C. § 1466, Horizon Lines "would owe $251,077.63 on the entire entry which included duties on the charges associated with the application of tin-free antifouling paint."

10. Horizon Lines protested portions of this determination, and Customs denied the protest in part. See Customs Headquarters Ruling ("HQ") H0151615 (October 23, 2007).

11. During the 2006 drydocking, the shipyard performed work on the Crusader consisting of the complete removal of all coatings from the vessel's underwater hull.

12. Those coatings included tin-bearing anti-fouling coatings and epoxy coatings.

13. The decision by Horizon to drydock the Crusader and to remove those coatings was made without knowledge by the decision-makers whether there was any blistering or corrosion on the vessel's underwater hull.

14. The decision by Horizon, at the time it was made, was part of a "fleet-wide concept" solely based on the intention of Horizon to comply with the IMO's Convention.

15. Testimony at trial by Joseph Walla provided the only percipient evidence regarding the condition of the Crusader's hull during that drydocking.

16. Walla's testimony and the six admitted photographic exhibits demonstrated that at the time of drydocking the Crusader's hull had suffered only minimal blistering and corrosion in the total amount of approximately ten (10) square meters.

17. Walla specifically testified, and the court believes his testimony, that when he physically examined the underwater hull in drydock, he photographed anything "out of the ordinary."

18. The court specifically finds that all other testimony on this issue was speculative and made by non-percipient witnesses.

19. While the court permitted qualification as an expert of the Government's witness, Erik Roberts, the court commented at the time that there was considerable doubt as to whether any weight should be accorded to his testimony.

20. In fact, the court found Mr. Roberts' testimony to be internally contradictory and declines to accord any weight to his opinion that as much as 25% of the underwater hull was blistered.

21. Mr. Roberts conceded at trial that his conclusions were based on reports which could be erroneous.

22. Mr. Roberts testified that he relied upon a report by Gary Watson and that he did not know if that report was an accurate description of the actual condition of the underwater hull.

23. Mr. Roberts admitted that he would have no reason to disbelieve Mr. Walla's testimony that each of the photographs admitted as evidence represented, at most, one to two square meters.

24. Mr. Roberts conceded at trial that calculations in the report he prepared were, in fact, incorrect.

25. Similarly, James Dolan and Pete Saliaris were non-percipient witnesses as to the actual physical condition of the underwater hull.

26. The court did find Mr. Dolan provided useful, competent, and accurate testimony about the underlying intent of the Convention, but his opinion testimony regarding the condition of the vessel was speculative and unreliable.

27. The Government called Pete Saliaris as an adverse expert witness. Given the convoluted nature of the questioning of Mr. Saliaris, his testimony was less useful to the court than it might have been in other circumstances.

28. Mr. Saliaris certainly has a considerable degree of practical expertise in marine hull coating systems. However, his testimony about the physical condition of the Horizon Crusader was speculative and lacked a competent foundational basis.

29. Mr. Saliaris conceded at trial that until he heard Mr. Walla's testimony he did not know the "approximate size" depicted in the photographic evidence.

30. Accordingly, the court finds that the testimony of Mr. Dolan and Mr. Saliaris provides no useful evidence regarding the amount of blistering which actually existed on the underwater hull of the Horizon Crusader.

31. The paint company data sheets offered in evidence showing the existence of a 36-month system were general guidelines at best, designed to foster paint sales and to insulate the manufacturer against possible claims for defects. They did not accurately forecast the life of an underwater hull coating system.

32. The court finds that the paint system in place on the underwater hull of the Crusader was in good order in 2006 and would have lasted for an indefinite time past the drydocking date.

33. The Court concludes that when the Crusader was drydocked in 2006 all cognizable evidence demonstrates that the work performed on it was necessitated only by a desire on the part of Horizon to comply with the Convention, and that any "repair" of blisters or corrosion was minimal and solely incidental to Horizon's purpose of compliance.

34. If any of these Findings of Fact should more properly deemed a Conclusion of Law it is so designated.

## III
## CONCLUSIONS OF LAW

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1581(a) and no jurisdictional defects exist.

2. The Government is entitled to a "presumption of correctness" under 28 U.S.C. § 2639(a)(1) that the work performed on the Horizon Crusader was dutiable repairs, but that presumption has been overcome by the facts determined in this trial.

3. Under 19 U.S.C. §1466 the court must determine the primary purpose of the work in order to conclude whether or not the work is dutiable. See H.C. Gibbs v. United States, 28 Cust. Ct. 318 (1952), aff'd, 41 C.C.P.A. 57 (1953).

4. The work performed on the Horizon Crusader was solely undertaken to comply with the Convention, and as a matter of law, any repairs effected were incidental and irrelevant to the nature of the work.

5. If the work performed had been intended to repair underwater hull damage, or if it had actually repaired more than minimal and inconsequential underwater hull damage, then the amounts expended would have to be allocated to repair and non-repair categories.

6. Given the factual findings of the court, however, it is clear that the Horizon Crusader's hull was in "good working order." Horizon Lines v. United States, 752 Fed. Supp. 2d 1305, 1314 (CIT 2010).

7. Horizon's protest was sufficiently distinct for Customs to completely comprehend its nature and character, and it was neither overbroad nor indefinite as to the invoice it was protesting. The government's Motion for a Directed Verdict is accordingly denied.

8. The expenses incurred by Horizon in connection with replacement of its anti-fouling system are non-dutiable.

9. If any of these Conclusions of Law should more properly be deemed a Finding of Fact it is so designated.

## JUDGMENT

This case having been heard at trial and submitted for decision, and the court, after due deliberation, having issued Findings of Fact and Conclusions of Law herein, now in conformity therewith, it hereby

**ORDERED, ADJUDGED** and **DECREED** that judgment be, and hereby is, entered in favor of Plaintiff; and it is further

**ORDERED, ADJUDGED** and **DECREED** that the vessel expenses at issue in this case are non-dutiable; and it is further

**ORDERED, ADJUDGED** and **DECREED** that the appropriate United States Customs and Border Protection officials shall reassess the duties at issue in accordance with the judgment of the court; and it is further

**ORDERED**, **ADJUDGED** and **DECREED** that the appropriate United States Customs and Border Protection officials shall refund to Plaintiff all excess duties together with interest as provided by law.

/s/ Evan J. Wallach
Evan J. Wallach, Judge

Dated: November 18, 2011
       New York, New York